**HYATT CORPORATION,
Plaintiff-Appellant,**

v.

**HYATT LEGAL SERVICES and Joel Hyatt, Defendants-Appellees.**

No. 83–1687.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1984.

Decided June 11, 1984.

Rehearing and Rehearing En banc Denied July 24, 1984.

---

Don H. Reuben, Reuben & Proctor, Chicago, Ill., for plaintiff-appellant.

David L. Schiavone, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants-appellees.

Before WOOD and COFFEY, Circuit Judges, and HENLEY, Senior Circuit Judge.[*]

HENLEY, Senior Circuit Judge.

This matter comes before the court on appeal of the district court's denial of a preliminary injunction. Appellant Hyatt Corporation, hereinafter Hyatt Hotels, filed suit against appellees Hyatt Legal Services and Joel Hyatt alleging violations of the Illinois Anti-Dilution Act and the Lanham Act, and asserting various other claims. Injunctive relief and damages were re-

---

[*] The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals, Eighth Circuit, is sitting by designation.

quested. After a hearing on Hyatt Hotels' motion for a preliminary injunction, the district court refused to grant the injunction based on its finding that Hyatt Hotels failed to show a likelihood of success on the issue of confusion. While we cannot disagree with the district court concerning its conclusions under the Lanham Act, we disagree with its implicit finding that Hyatt Hotels did not meet the requirements for a preliminary injunction under the Anti-Dilution Act. We therefore reverse and remand for entry of a preliminary injunction against Hyatt Legal Services.

Appellant Hyatt Hotels is a well known and well regarded hotel operator with some seventy hotels in the United States. It has operated hotels under the Hyatt name for some twenty-five years. Hyatt Hotels advertises nationally, primarily in newspapers and magazines. It spends approximately $50 million annually for advertising. Twelve million people spend the night at a Hyatt Hotel every year, and several more millions attend meetings and events at the hotels. The prices of its hotel rooms range from moderate to expensive.

Hyatt Legal Services, founded in 1977 in Cleveland, Ohio, is and always has been a legal entity completely separate and apart from Hyatt Hotels. It provides legal services in a growing number of states, sixteen at the time of the hearing. There are four partners, appellee Joel Hyatt, Susan Hyatt, Wayne Willis and William Brooks. Hyatt Legal Services advertises extensively, mainly on television, and directs its advertisements towards people with low and moderate incomes. It takes only certain kinds of cases, primarily simple cases which can be rapidly handled at high volume. Its goal is to provide basic legal services at reasonable prices to people who might otherwise not see a lawyer. Hyatt Legal Services spent approximately $3 million in advertising in 1982.

## I.  LANHAM ACT.

Hyatt Hotels registered the service mark "Hyatt" under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, in 1971. *See* 15 U.S.C. § 1053. It complains that Hyatt Legal Services is guilty of infringement of that mark, *see* 15 U.S.C. § 1114, and of unfair competition, 15 U.S.C. § 1125. At this stage, the validity of the registration is not disputed.

In order to show infringement, the owner of a mark must show that the alleged infringer is using the same or similar mark in a way which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). The district court noted that the services provided by Hyatt Hotels and Hyatt Legal Services are "distinctly different." The court then evaluated Hyatt Hotels' evidence of confusion as follows:

> Among the thousands of telephone calls to [Hyatt Hotels] daily, there have been occasional instances in which persons seeking to call Hyatt Legal Services have called the Hyatt Corporation legal department ... or have called a hotel or another of [Hyatt Hotels'] offices to inquire whether there was any relationship .... These occasional calls do not add up, in this court's judgment, to a likelihood of confusion.

*Hyatt Corp. v. Hyatt Legal Services,* No. 82 C 6178 (N.D.Ill.1983). The court emphasized that Hyatt Legal Services' advertisements do not in any way imply a connection with Hyatt Hotels and concluded that Hyatt Legal Services' present use of the mark "does not support the conclusion that [Hyatt Hotels] has a reasonable likelihood of prevailing on the merits." *Id.*

Two rules call for restraint in our review here. First, the question of likelihood of confusion is one of fact and is therefore subject to the clearly erroneous rule. *Processed Plastic Co. v. Warner Communications, Inc.,* 675 F.2d 852, 857 (7th Cir.1982). Second, the district court merely denied a preliminary injunction; it did not decide the case on the merits. A denial of a preliminary injunction will be reversed only for an abuse of discretion. *See id.* at 858; *Ideal Industries, Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1022

(7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

■ The district court's opinion shows that it gave consideration to all the evidence. *Cf. Union-Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 387 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). The evidence of confusion put forth by Hyatt Hotels was not overwhelming. While our reading of the depositions, exhibits and hearing transcript would lead us to conclude that there was more evidence of confusion than occasional misdirected phone calls, and while perhaps the evidence would have supported the opposite result, the district court's conclusion that Hyatt Hotels did not show a likelihood of success on the issue of confusion is not clearly erroneous. We find no abuse of discretion in the court's refusal to grant the motion on Lanham Act grounds.[1]

■ Hyatt Hotels also argues that Hyatt Legal Services uses the same typeface as Hyatt Hotels, which enhances the confusion caused by use of the same mark. In the abstract, there is some merit to this position. However, on the record before us we are unable to conclude that Hyatt Hotels consistently uses the typeface used by Hyatt Legal Services; rather it appears to be one of several used by Hyatt Hotels and not an inherent part of the mark. The district court characterized the typeface as of "no compelling distinctive style." Nor does the record indicate specific instances of confusion caused, at least in part, by similarity of typeface. We are not deciding this issue against Hyatt Hotels. Rather, we merely find that on the record as developed so far Hyatt Hotels has not established a likelihood of success on the issue of whether the similarity of typeface causes increased confusion.

1. Of course, Hyatt Hotels may present further evidence of confusion when the case is tried on the merits.

2. An injunction must also be granted if the prior user shows a likelihood of injury to reputation. The district court found that Hyatt Legal Services had conducted itself "in a circumspect manner," and there is no evidence to the contrary.

## II. ANTI–DILUTION ACT.

■ The Illinois Anti-Dilution Act provides in pertinent part that

[e]very person ... adopting and using a mark [or] trade name, ... may proceed by suit, and the circuit court shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark [or] trade name ... if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark [or] trade name ... of the prior user notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services.

Ill.Rev.Stat. ch. 140 § 22 (1981). Thus, an injunction must be granted if the prior user can show that the mark is distinctive and that the subsequent user's use dilutes that distinctiveness;[2] neither competition between the users nor confusion need be shown. *Polaroid Corp. v. Polaraid, Inc.*, 319 F.2d 830, 836 (7th Cir.1963); *Edgewater Beach Apartments Corp. v. Edgewater Beach Management Co.*, 12 Ill. App.3d 526, 299 N.E.2d 548, 554 (1973).

A. Likelihood of success.

While some of the evidence the district court considered in evaluating Hyatt Hotels' Lanham Act claim is relevant to the dilution question, the district court did not address separately Hyatt Hotels' dilution claim. The court's focus was clearly on the lack of confusion, which is not essential to a dilution claim. In a claim under the Anti-Dilution Act, the relevant factors are, as stated, distinctiveness of the mark and whether the mark is being diluted.[3] We consider the evidence before this court to be more than sufficient to mandate a finding that Hyatt Hotels is likely to succeed on the merits.

We are unwilling to conclude that the mere possibility of a few malpractice claims against Hyatt Legal Services will result in harm to Hyatt Hotels' reputation.

3. Prior use must also be established. That is undisputed here.

1. Distinctiveness of the mark.

Hyatt Legal Services points out that "Hyatt" is a personal name and, argues that therefore it cannot be distinctive. Hyatt Legal Services also contends that because a number of other businesses in the United States use "Hyatt" in their names, the "Hyatt" mark is not distinctive.

■ The district court found the name "Hyatt" to be "reasonably common." Even if this is so,[4] it does not preclude a finding that the mark "Hyatt" is distinctive. The fact that a mark is "coined" or invented may make distinctiveness easier to show. *Polaroid,* 319 F.2d at 837. Other factors are also important, however, including the length of time the mark has been used, the scope of advertising and promotions, the nature and extent of the business, and the scope of the first user's reputation. *See id.* at 832; *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 332 (N.D.Ill.1981).

■ In this case, Hyatt Hotels has been using its mark for some twenty-five years. It has been registered for thirteen years. Over the past several years, Hyatt Hotels has conducted an extensive advertising campaign designed to expand recognition of its trade name. That advertising in no way implies that "Hyatt" is a particular person's name; rather "Hyatt" is used as a trade name to indicate the source of the service. The hotel business is one in which travelers consider the name of a hotel to indicate its quality, cost, services, etc. Hyatt Hotels' reputation in its field is, as the district court found, excellent. Except for the appellee, the record shows no other national or regional business which uses the name "Hyatt" to identify its services. In these circumstances, we have no difficulty in concluding that Hyatt Hotels' trade name "Hyatt" is distinctive.

2. Dilution.

■ The second issue is whether Hyatt Legal Services' use of the mark "Hyatt"

dilutes the mark. Important factors in this determination are the similarity between the marks used by the parties, and the extent of the marketing effort by the second user. *Polaroid,* 319 F.2d at 832; *Instrumentalist,* 509 F.Supp. at 323.

■ Hyatt Legal Services uses the same mark as Hyatt Hotels. It is not modified in any way to show that it is a personal name rather than a trademark, as would be the case if "Joel Hyatt Legal Services" or "Hyatt, Hyatt, Willis & Brooks" were used to identify the firm. As indicated, Hyatt Legal Services has extensively advertised in the past few years, spending millions of dollars. While it does not yet operate in every state or every major city, such a national operation is part of its expansion plans, and it presently has offices in nearly a third of the states. Hyatt Legal Services' use of the mark is far more extensive than was the use in *Polaroid,* where the defendant operated in only three states and spent only $1,000.00 on advertising annually. *Polaroid,* 319 F.2d at 832. We think it clear that Hyatt Hotels has shown a likelihood of success on the question whether Hyatt Legal Services' use dilutes the mark.

B. Irreparable injury.

■ Hyatt Hotels argues that Hyatt Legal Services' use of its mark "threaten[s] to unravel the result of more than twenty-five years of effort by [Hyatt Hotels] to establish the Hyatt mark." We note that it is the very nature of dilution to gnaw away insidiously at the value of a mark. *See Polaroid,* 319 F.2d at 836. Such an injury would be remarkably difficult to convert into damages. "[T]here is no effective way to measure the loss of sales or potential growth—to ascertain the people who don't knock on the door or to identify the specific persons who do not [return] because of the existence of the infringer." *Instrumentalist,* 509 F.Supp. at 323. We conclude that the difficulty Hyatt Hotels would encounter in proving

---

**4.** The evidence relied upon by the district court on this point was far from compelling. How-ever, we see no reason to address its correctness in view of the remainder of our discussion.

damages incurred because of Hyatt Legal Services' dilution of its mark and the nature of the injury direct a finding of irreparable injury.

### C. Public interest.

Granting the injunction will not disserve the public interest. *Wesley-Jessen Division v. Bausch & Lomb Inc.*, 698 F.2d 862, 864 (7th Cir.1983). The public has an interest in the protection of trademarks and trade names. Further, the public interest in affordable legal services and accurate advertising of legal services will not be adversely affected by the injunction.

### D. Balance of hardships.

Hyatt Legal Services argues that a preliminary injunction will be costly and will result in the loss of the extensive name recognition it has attained over the past few years.

We recognize that a name change will cost Hyatt Legal Services money. Signs, stationery, and advertising will have to be changed. However, Mr. Hyatt conceded during the preliminary injunction hearing that television ads get "stale" and have to be changed frequently. Offices run out of stationery, which then has to be reordered. A name change need not add substantially to these costs. Further, we consider Hyatt Hotels' proof that Hyatt Legal Services is violating the Anti-Dilution Act to go substantially farther than showing a likelihood of success, and we may certainly take into account the strength of Hyatt Hotels' case in balancing the equities. *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982). Finally, it appears that Hyatt Hotels' rights to an undiluted trade name are being diminished every time a Hyatt Legal Services advertisement appears before the public. *See*

*Instrumentalist*, 509 F.Supp. at 334. It would be difficult to cure this injury with money damages. We conclude that the harm caused Hyatt Hotels by denying the injunction would be more serious than the harm caused Hyatt Legal Services by granting the injunction.

### III. REMEDY.

Hyatt Hotels does not request that Hyatt Legal Services be enjoined from using the name "Hyatt" at all. Rather, Hyatt Hotels requests that Hyatt Legal Services be directed to use Joel Hyatt's full name, a disclaimer of connection with Hyatt Hotels, and a different typeface for the word "Hyatt." We agree that limited injunctive relief is proper in this case, but we think Hyatt Hotels' approach may not be the best in the circumstances.

The dilution of Hyatt Hotels' mark flows primarily from Hyatt Legal Services' use of the name "Hyatt" without modification or any indication that it is a personal name, not a trade name. Hyatt Hotels' mark is also diluted because of the nationwide scope of Hyatt Legal Services' business. Hyatt Hotels has not requested that we enjoin Mr. Hyatt from further expanding his business, and we would not consider such an injunction appropriate in this case. Thus, protection of the "Hyatt" mark must come by way of modification of Hyatt Legal Services' name. A name such as "Joel Hyatt Legal Services" or some combination of the last names of the partners—the traditional means of identifying a law firm— would meet this concern. There may be other appropriate names which would not violate the Anti-Dilution statute. Rather than selecting the name ourselves, we believe the better practice would be to allow Hyatt Legal Services to select its new name.[5] If Hyatt Hotels believes the new

---

**5.** This will also allow Hyatt Legal Services to make sure its name will not violate ethics codes in states in which it operates. We are not sympathetic to Mr. Hyatt's claim that requiring a name change may force him to act unethically. Not to require a change would allow a violation of the Anti-Dilution Act to go unchecked. Mr. Hyatt and his partners must oper-

ate their law practice in compliance with both the Anti-Dilution Act and state ethics requirements. We believe that by allowing Mr. Hyatt and his partners to select their new name, the court can avoid the ethical questions which are not a proper matter for the district court to consider in the context of this case. We assume the name chosen will have no obvious ethical

name violates the Anti-Dilution Act or the Lanham Act, leave to amend its complaint should be freely granted.

As discussed *supra* in a slightly different context, we do not believe Hyatt Hotels has proved that its use of a special typeface is distinctive, and therefore decline at this point to enjoin Hyatt Legal Services from using that typeface. Of course, more evidence from both parties can be received when the case is tried.

We are not sure that a disclaimer of association with Hyatt Hotels is necessary. We think it likely that the name change will be sufficient to protect Hyatt Hotels since it will make clear that the name "Hyatt" as used by Hyatt Legal Services is a personal name, not a trade name. However, we leave this to the district court to evaluate in light of the name chosen by Hyatt Legal Services; it may also be considered if more evidence is presented after a hearing on the merits.

CONCLUSION

The case is reversed and remanded to the district court for entry of an injunction prohibiting the appellee from using the name Hyatt Legal Services. The appellee is to select promptly a new name, and should notify the district court of the change. Trial on the merits may then proceed.[6]

The judgment of the district court is reversed and remanded for entry of a preliminary injunction and for further proceedings consistent with this opinion.

HARLINGTON WOOD, Jr., Circuit Judge, concurring in part and dissenting in part.

Although I fully concur with the majority disposition of the Lanham Act claim, I have some reservation about undertaking

problems (*i.e.,* The Best Law Firm in Town); the ethical improprieties pointed out by Mr. Hyatt are much less clear, and might differ from state to state. In this case the district court cannot be required to investigate on its own, nor can Hyatt Hotels be charged with an investigation, of the propriety of the new name. That is the responsibility of Mr. Hyatt and his law partners.

our own original analysis and disposition of the Illinois Anti-Dilution Act claim, which was not addressed specifically by the district court.

As sound as this court's analysis of the Anti-Dilution Act claim may be, I would prefer to remand that issue to the district court for its further consideration and the fashioning of its own appropriate remedy, if necessary. To that extent only, I respectfully dissent.

6. We note that Hyatt Hotels raised other claims against Hyatt Legal Services in its complaint, including common law unfair competition. These claims may, of course, be taken up at the trial on the merits.